

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| J. LEE MILLIGAN, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:06-CV-207-J |
| | § | |
| CIC FRONTIER, INC., | § | |
| Defendant. | § | |
| | § | |

## CHARGE TO THE JURY

MEMBERS OF THE JURY:

This case is submitted to you on specific questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law you must be governed by the instructions in this charge.

Do not let bias, prejudice, or sympathy play any part in your deliberations.

Do not consider any statement which I have made, either in the course of trial or in these instructions, as an indication that I have any opinion about the facts of the case.

Do not decide who you think should win and then try to answer the questions accordingly. You will not decide any issue by lot, by drawing straws, or by the use of any other method of chance. Do not reach your result by adding together each juror's figures and dividing by the number of jurors to get an average. Further, do not do any trading on your answers as your answers and verdict must be unanimous.

All questions are to be answered by you from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

The testimony of a single witness, which produces in your minds the belief in the likelihood of truth, is sufficient for the proof of any fact, even though a greater number of witnesses may have testified to the contrary, if you believe this witness and have considered all the other evidence.

Generally speaking there are two types of evidence which you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances which points to the existence or nonexistence of certain facts. As a general rule the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

Certain testimony was presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned witnesses under oath. A court reporter was present and recorded the testimony. The questions and answers were shown to you. This deposition testimony is entitled to the same consideration, and is to be judged by you as to credibility, and weighed and otherwise considered by you insofar as possible in the same way, as if the witness had been present and had testified from the witness stand in court.

The statements and arguments of counsel are not evidence.

Attached to this charge is the parties' Narrative of Stipulated Facts. These facts are to be taken as true for purposes of this trial.

## Statement of the Case

J. Lee Milligan, Inc. alleges that CIC Frontier, Inc. breached Sales Order 1347 by refusing to deliver all of the asphalt that the Sales Order required CIC Frontier, Inc. to deliver for a project in Gray County. J. Lee Milligan, Inc. also alleges that CIC Frontier, Inc. breached Sales Order 1348 by refusing to deliver the asphalt that the Sales Order required CIC Frontier, Inc. to deliver for a project in Armstrong County.

CIC Frontier denies that it breached Sales Order 1347 or Sales Order 1348. CIC Frontier, Inc. alleges that J. Lee Milligan, Inc. failed to comply with Sales Order 1347's payment terms. CIC Frontier, Inc. alleges that selling asphalt under Sales Orders 1347 had become commercially impracticable. And CIC Frontier, Inc. alleges that Sales Order 1348 expired on October 31, 2006.

J. Lee Milligan, Inc. denies that it failed to comply with Sales Order 1347's payment terms. J. Lee Milligan, Inc. denies that selling asphalt under Sales Order 1347 had become commercially impracticable. And J. Lee Milligan, Inc. also denies that Sales Order 1348 expired on October 31, 2006.

## Breach of Contract

A contract is breached or broken when a party does not do what it promised to do in the contract.

A contract is also breached or broken, even if the time for performance has not arrived, when one party notifies the other that it does not intend to do what was promised in the contract.

You are instructed that the terms of the contract may be explained by a "usage of trade." A "usage of trade" is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question.

### Commercial Impracticability

Except so far as a seller may have assumed a greater obligation:

(a) Delay in delivery or nondelivery in whole or in part by a seller who complies with paragraphs (b) and (c) is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made or by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be invalid.

(b) Where the clauses mentioned in paragraph (a) affect only a part of the seller's capacity to perform, he must allocate production and deliveries among his customers but may at his option include regular customers not then under contract as well as his own requirements for further manufacture. He may so allocate in any manner which is fair and reasonable.

(c) The seller must notify the buyer seasonably that there will be delay or nondelivery and, when allocation is required under paragraph (b), of the estimated quota thus made available for the buyer.

The law does not excuse performance which simply becomes more difficult or more expensive, or upon the occurrence of a condition, the risk of which was assumed by either party, but excuses performance only upon the nonoccurrence of a contingency which was a basic assumption on which the contract was made.

Increased cost alone does not excuse performance unless the rise in cost is due to some unforeseen contingency which alters the essential nature of the performance. Neither is a rise or a collapse in the market in itself a justification, for that is exactly the type of business risk which business contracts made at fixed prices are intended to cover. But a severe shortage of raw

materials or of supplies due to a contingency such as war, embargo, local crop failure, unforeseen shutdown of major sources of supply or the like, which either causes a marked increase in cost or altogether prevents the seller from securing supplies necessary to his performance, is within the contemplation of this section.

A mere change in the degree of difficulty or expense due to such causes as increased wages, prices of raw materials, or costs of construction, unless well beyond the normal range, does not amount to impracticability since it is this sort of risk that a fixed-price contract is intended to cover.

## Damages

You may be required to answer a question concerning damages, if any, to which J. Lee Milligan, Inc. is entitled. You should not interpret the fact that I have given you instructions about damages as an indication in any way that I believe that a party should, or should not, win this case.

If you decide for J. Lee Milligan, Inc. on its claims for breach of contract, you must then fix the amount of its damages. This is the amount of money that is needed to put it in as good a position as it would have been if the contract had not been breached.

The amount of damages for a breach of Sales Order 1347 is as follows: the difference between the price of the asphalt in Sales Order 1347 and the price of the asphalt from Valero, minus any costs that J. Lee Milligan, Inc. saved by not buying the asphalt from CIC Frontier, Inc., minus the amount that J. Lee Milligan, Inc., owed for the asphalt that CIC Frontier, Inc. delivered under Sales Order 1347.

The amount of damages for a breach of Sales Order 1348 is as follows: the difference between the price of the asphalt in Sales Order 1348 and the market price of the asphalt at the time of the breach, minus any costs that J. Lee Milligan, Inc. will save by not buying the asphalt from CIC Frontier, Inc.

If during the course of your deliberations, you wish to communicate with the Court, you should do so only in writing by a written note handed to the bailiff and signed by the Foreperson.

When you are retired to the jury room to deliberate upon your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. You will select your Foreperson, and after you have reached your unanimous verdict, you will return this charge together with your written answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

You are further advised that the law does not require a juror to talk with anyone after he has reached his verdict unless the Court orders otherwise.

Your Foreperson will sign in the space provided after you have reached your verdict.


**MARY LOU ROBINSON**
United States District Judge


Date:

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

J. LEE MILLIGAN, INC.                            §
                                                 §
            Plaintiff and                        §
            Counter-Defendant,                   §
                                                 §
VS.                                              §            NO. 2:06-CV-207-J
                                                 §
CIC FRONTIER, INC.,                              §
                                                 §
            Defendant and                        §
            Counter-Plaintiff.                   §

**NARRATIVE OF STIPULATED FACTS AND STIPULATION AS TO
THE AUTHENTICITY AND ADMISSIBILITY OF EXHIBITS**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW the Parties and submit the following Narrative of Stipulated Facts

and Stipulation as to the Authenticity and Admissibility of Exhibits pursuant to the

Court's Order of June 22, 2007:

**Narrative of Stipulated Facts**

J. Lee Milligan, Inc. ("Milligan") is an asphalt paving contractor and CIC Frontier,

Inc. ("CIC") is a supplier of asphalt products to contractors such as Milligan and others.

Asphalt is an essential ingredient in the production of hot mix, which is used in asphalt

paving. On November 1, 2005, Milligan entered into two contracts with CIC for the sale

of asphalt. These contracts are referred to as Sales Orders Nos. 1347 and 1348. The

contracts were drafted by CIC, and were signed by Milligan President Doug Walterscheid

and CIC Executive Vice-President David Massey. The asphalt for Contract No. 1347 was to be used for a Texas Department of Transportation ("TxDOT") highway project in Gray County, Texas and the asphalt for Contract No. 1348 was to be used for a TxDOT highway project in Armstrong County, Texas. Milligan had separate contracts with TxDOT for these projects.

Milligan took delivery from CIC of seven truckloads of asphalt under Contract No. 1347 between June 28, 2006 and July 10, 2006. This asphalt was used in connection with the Gray County TxDOT project.

On July 6, 2006, Milligan received a letter from CIC canceling Sales Order Contract No. 1348.

On July 10, 2006, Milligan mailed a check to CIC in the amount of $9,041.25 in payment for the first load of asphalt that it had taken for the Gray County project.

On July 11, 2006, Milligan received another letter from CIC canceling all contracts with Milligan. On that same date, CIC turned away trucks from its facility that were sent on behalf of Milligan to take delivery of another load of asphalt under Contract No. 1347.

After receiving the July 11 letter canceling the contracts, Milligan stopped payment on the $9,041.25 check. Milligan also withheld payment for the other six loads.